Filed 2/5/26  In re G.S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.S., a Person Coming Under the Juvenile Court Law. | B344542 (Los Angeles County Super. Ct. No. 25CCJP00133A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>W.T.,<br><br>        Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Sumako McCallum, Judge. Reversed and remanded.

Owen P. Martikan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

W.T. (Mother) challenges the sufficiency of the evidence to support an assertion of dependency jurisdiction on the basis that she poses a substantial risk of serious physical harm to her non-minor dependent child, G.S. (born May 2007), also known as E.S.[1] under Welfare and Institutions Code section 300 subdivisions (a) and (b).[2] We conclude the evidence of a single physical altercation between mother and E.S. is insufficient to demonstrate a risk of serious physical harm warranting dependency. The order of dependency is reversed, and the case remanded to the juvenile court for further proceedings.

---

[1] Throughout the proceedings, G.S., went by the name E.S. As the juvenile court did and both parties also do on appeal, we will refer to the minor as E.S.

[2] Unless stated otherwise, all statutory references are to the Welfare and Institutions Code.

# BACKGROUND

## A. Factual Background

Mother and presumed father, T.S. (father), are the parents of four children. E.S., the oldest child, has identified with a male name and male pronouns since he was about 12 or 13 years old. His parents have been aware of this since middle school, but he formally told them of his gender identity about two to three months before the incident giving rise to this case. E.S. has three younger brothers. A.S. was eleven years old when this case began, and twins El.S. and C.S. were five years old. E.S. graduated from high school in 2024 and is now attending college. He turned eighteen years old in May 2025.[3] Until January 2025, the family was living together in Monterey Park.

On the afternoon of January 11, 2025, mother was giving E.S. a ride to his church. E.S. was in the passenger seat, and his three siblings were in the back seat. They were running a bit late, and mother thought she needed gas. She turned the car around to go to a gas station. E.S. rolled his eyes and made mother angry when he called her a "bitch". Mother went to grab his glasses, and scratched E.S.'s face. E.S. reached for the steering wheel and mother tried to hit him and grabbed his hair. Then, she bit him on the arm intending to stop him from interfering with her driving. Mother pulled over and let E.S. out of the car. E.S. went to the home of a cousin and uncle in San Gabriel, and later moved to the home of a non-related caregiver.

E.S. sustained several scratches on his face, small abrasions on his forehead and lower lip, and red bite marks on both his hands. He thought he caused the injury to his lower lip

---

[3] We hereby grant respondent's request for judicial notice regarding E.S.'s age.

3

when he bit it. It does not appear that any of the injuries required medical attention.

The altercation came to the attention of the Los Angeles County Department of Children and Family Services (Department) when a concerned church member informed Monterey Park Police of E.S.'s injuries. E.S. told the investigating social worker that an incident like this had never happened before, and that generally his parents do not really hit him or his siblings. There was an incident during the pandemic when he cut his hair without permission and mother got angry with him. She hit him in the stomach and legs, but he does not remember any resulting marks or bruises. E.S. also remembered sometimes being physically disciplined as a child with a "smack on the lip." But he said there was no current physical discipline.

E.S.'s siblings said they get yelled at when they are in trouble, and generally denied any physical discipline by their parents. Although, C.S. said that father had hit him before when he was in trouble. Father stated that he and mother "don't hit our kids."

There was a prior child welfare referral in 2013 when a teacher at E.S.'s school noticed some scratches on the right side of his face. E.S. said mother accidentally scratched his face when she was reaching for some napkins. The incident was considered an accident, and the referral was determined to be unfounded. Apart from the current case and the 2013 referral, the family has had no other contact with the Department. Both parents were cooperative with Department representatives.

E.S. denied being afraid to return home, but preferred to remain with his caregiver. While he felt physically safe in the family home, E.S. did not feel his emotional needs were met.

When the social worker talked to E.S. about returning home he started crying and refused to return, leaving no alternative but to detain him.

Both parents wanted E.S. to return home. Mother expressed that E.S. needs counselling, stating, "[s]he has something inside that we don't understand."

**B.    Procedural Background**

The Department filed a dependency petition on January 15, 2025, alleging that E.S. had suffered or was at risk of serious physical harm (§ 300, subds. (a) [intentional physical harm] and (b) [failure to protect]) due to two altercations with mother (namely, the January 2025 and pandemic incidents). The petition also alleged the younger siblings were at a substantial risk of harm due to the abuse inflicted upon E.S (§ 300, subd. (j)). The juvenile court held a detention hearing the next day, and determined a prima facie showing had been made that E.S. was a minor described in section 300, and remaining in the family home was contrary to his welfare. The court ordered weekly monitored parental visits and medical and mental health examinations for all four children.

The jurisdictional hearing was held on February 26, 2025. The juvenile court determined that there was a history of abuse based upon the "smack on the lip" E.S. reported had occurred when he was a young child, the incident during the pandemic when he was hit in the legs and stomach, and the unfounded 2013 referral. The court found that in each of those incidents mother inflicted physical harm upon E.S. The court concluded that, together with the prior incidents, the "serious" injuries mother caused in the January 2025 incident warranted jurisdiction. The court sustained allegations against both

5

parents under section 300, subdivisions (a) and (b), thereby finding that E.S. suffered or was at risk of serious physical harm.[4]

The juvenile court concluded that it was reasonably necessary to remove E.S. from the family home for his physical safety, and it would be detrimental to return him. Case plans were approved for mother and father that consisted of individual and possible family counselling with E.S. if recommended by a therapist, and weekly monitored visits.

Mother timely appealed the order asserting jurisdiction and sustaining E.S.'s removal from the family home.

## DISCUSSION

### A. Possible Mootness

Mother appealed from the juvenile court's jurisdictional findings. Father did not. The juvenile court sustained findings under section 300 subd. (a) and (b) against both parents. However, the factual allegations of the petition are directed only against mother. As a result, we asked the parties to file letter briefs addressing the legal significance, if any, of father's omission from the notice of appeal.

The parties acknowledge that father's failure to appeal from the jurisdictional finding could possibly moot mother's appeal. "[W]here jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot." (*In re D.P.* (2023) 14 Cal.5th 266, 283.) However, both parties argue we should address mother's appeal on the merits because the underlying allegations concern physical

---

[4] The allegations of a serious risk of harm to his younger siblings under section 300 subd. (j) were dismissed.

6

abuse of a child, and if sustained, could result in mother's inclusion in the California Child Abuse Central Index (CACI).

Our Supreme Court has recognized a parent's inclusion in the CACI has severe legal consequences. (*Id.* at p. 278.)  When a parent has made a showing that sustained allegations of physical child abuse have been or will be reported to CACI, the parent has demonstrated ongoing harm arising from a juvenile court order, warranting appellate review.  (*In re S.R.* (2025) 18 Cal.5th 1042, 1053.)  In other cases, when the alleged conduct is likely but not indisputably reportable, "courts have discretion to conduct a merits review of the parent's claim even if the case is moot." (*Ibid.*)

Given the nature of the allegations sustained against mother, we will exercise our discretion to address her arguments on the merits.

**B.    Standard of Review**

"The Department has the burden of proving by a preponderance of the evidence that [E.S. was a dependent] of the court under section 300."  (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

"'Substantial evidence is evidence that is "reasonable, credible, and of solid value"; such that a reasonable trier of fact

7

could make such findings.'" (*In re G.Z.* (2022) 85 Cal.App.5th 857, 876.) "Substantial evidence is not synonymous with *any* evidence; a decision supported by a "'mere scintilla of evidence'" need not be affirmed on appeal. [Citation.] Further, ""[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence."'"" (*Ibid.*) """"[I]nferences that are the result of mere speculation or conjecture cannot support a finding [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record."'"" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046 (*J.A.*), italics omitted; accord, *In re B.D.* (2024) 103 Cal.App.5th 315, 323–324.)

"'The parent has the burden on appeal of showing there is insufficient evidence to support the juvenile court's order.'" (*In re E.G.* (2025) 112 Cal.App.5th 707, 721.)

**C.    Application of the Law to the Facts.**

Section 300, subdivision (a) provides that a child comes within the jurisdiction of the juvenile court if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent." Section 300, subdivision (b)(1)(A) authorizes jurisdiction if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent ... to adequately supervise or protect the child." The statute does not define "serious physical harm or illness," but instead leaves the matter to "common intelligence [to] discern what injuries fall within its reach." (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.)

Here, there is no question that mother had an inappropriate physical altercation with E.S. She reacted physically to his adolescent impatience and taunting by hitting him and biting his arm when he reached for the steering wheel. She caused minor abrasions and bruising on his face and hands. "But the evidence in the record before us does not support a finding that [E.S.'s] injuries amounted to 'serious physical harm' under section 300, subdivision (a). . . . "'Although there may be an "I know it when I see it" component to th[e] factual determination [of what constitutes 'serious physical harm], . . . we believe that parents of common intelligence can discern what injuries fall within its reach.' [Citation.] We conclude that [E.S.'s] harm fell outside the statute's reach." (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 132, 138–139 (*Isabella F.*) [holding that a single incident in which a mother inappropriately scratched her child's face during an altercation did not warrant jurisdiction].)[5]

While a court may consider past events in reaching a determination that a child requires juvenile court protection (*Isabella F., supra,* 226 Cal.App.4th at p. 139; see also *In re N.M.* (2011) 197 Cal.App.4th 159, 165), the past events here do not provide evidence of a risk of serious physical harm. The incident prompting the child welfare referral in 2013 was considered an accident and the referral was determined to be "unfounded." The child abuse reporting statutes provide that an "'[u]nfounded

---

[5] The same reasoning applies to the jurisdictional finding under section 300, subdivision (b). (*In re D.M.* (2015) 242 Cal.App.4th 634, 640 (*D.M.*) ["The Legislature chose to use the term 'serious physical harm' throughout section 300. "'When a word or phrase is repeated in a statute, it is normally presumed to have the same meaning throughout.'" [Citation.]"].)

report' means a report that is determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect." (Pen. Code § 11165.12, subd. (a).) Because the 2013 incident did not provide a basis for the juvenile court to exercise its jurisdiction on the basis of a past event of physical abuse between mother and E.S., the court should not have considered this incident in reaching its jurisdictional finding.

E.S. also recalled being physically disciplined as a child with a "smack on the lip," and that mother "hit him in the stomach and legs" when he cut his hair without permission. Neither do either of these past events, alone or in combination, provide sufficient evidence to warrant jurisdiction. ""[A] parent has a right to reasonably discipline his or her child and may administer reasonable punishment[.]""" (*D.M., supra*, 242 Cal.App.4th at pp. 640-641.) "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.'" (*Id.* at p. 641.)

Even reviewing the record in the light most favorable to the juvenile court's findings, there is simply not enough detail here for us to conclude that these events demonstrate a future risk of serious physical harm. All we know is that mother once smacked E.S. on his lips, and several years later, hit him in the stomach and legs. We don't know what level of force was used (although

10

from E.S.'s statements, it does not appear that either incident resulted in injury), or whether the conduct was genuinely disciplinary or warranted in the circumstances.  To conclude that either incident was an incident of prior excessive discipline would require resort to inferences based on speculation or conjecture. (*J.A.*, *supra*, 47 Cal.App.5th at p. 1046 ["""""[I]nferences that are the result of mere speculation or conjecture cannot support a finding [citations]."""""], italics omitted.)  Thus, these incidences cannot be used to support a finding of a prior history of physical abuse.

Accordingly, we conclude that mother has met her burden to show that there was insufficient evidence that she posed a substantial risk of serious physical harm to E.S. to warrant the exercise of dependency jurisdiction.  We reach our conclusion based on an assessment of the physical harm allegations of the petition and the evidence supporting them.  But our rejection of the physical harm basis for dependency does not mean that we see no reason for the juvenile court's concern for E.S.'s welfare.

Even though E.S. feels safe in the family home, and has no concern for physical injury there, our review of the record and the arguments reveal that E.S.'s discovery of his identity has presented challenges for him and his parents.  Counsel for mother, E.S., and for the Department all alluded to this at the dispositional hearing. As mother acknowledged, "[s]he has something inside that we don't understand."  However, such evidence was not developed and did not form the basis of the juvenile court's decision. It is therefore not a basis for affirming that court's ruling. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 606.) Nonetheless, we hope that the services provided to E.S. and his family since February 2025 have helped them all come to a better

11

understanding of who he is and how to relate to each other as a family.

## DISPOSITION

The juvenile court's order of February 26, 2025, sustaining the allegations of the dependency petition is reversed. The matter is remanded to the juvenile court for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
SIGGINS*

We concur:


_____, P. J.
LUI


_____, J.
RICHARDSON

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.